**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x
                                   :

In re:                              :    Chapter 11
                                   :

SEARS HOLDINGS CORPORATION, et al.,    :    Case No. 18-23538 (RDD)
                                   :

             Debtors.           :    (Jointly Administered)
                                   :

------------------------------------------------------------- :
                                   :    Adv. Proc. No. 19-08250 (RDD)

SEARS HOLDINGS CORPORATION, *et al.*,    :
                                   :

            Plaintiffs      :

    v.                              :

EDWARD SCOTT "EDDIE" LAMPERT, *et al.*,   :
                                   :

            Defendants.
-------------------------------------------------------------

## <u>RULE 26(f) DISCOVERY REPORT</u>

On April 17, 2019, Plaintiffs Sears Holdings Corporation, Sears Roebuck and Co.,

Sears Development Co., Kmart Corporation, and Kmart of Washington, LLC (collectively,

"Plaintiffs"), commenced the above-captioned adversary proceeding against Defendants Edward

Scott "Eddie" Lampert; ESL Investments, Inc.; RBS Partners LP; CRK Partners LLC; SPE

Master I L.P.; ESL Partners L.P.; SPE I Partners L.P.; RBS Investment Management LLC; ESL

Institutional Partners L.P.; ESL Investors, L.L.C.; JPP LLC; JPP II LLC; Fairholme Capital

Management, L.L.C.; Cesar L. Alvarez; Bruce Berkowitz; Alesia Haas; Kunal Kamlani; Steven

Mnuchin; Thomas J. Tisch; Seritage Growth Properties, Inc.; Seritage Growth Properties, L.P.;

Seritage KMT Mezzanine Finance LLC; Seritage SRC Mezzanine Finance LLC; Seritage KMT

Finance LLC; Seritage SRC Finance LLC; Seritage GS Holdings LLC; Seritage SPS Holdings

LLC; and Seritage MS Holdings LLC (together, the "Defendants") (together with Plaintiffs, the "Parties" and each a "Party").

In accordance with Fed. R. Civ. P. 26(f) (made applicable to this adversary proceeding by Fed. R. Bankr. 7026), counsel for the Parties met and conferred on May 30, 2019 in advance of the Initial Pretrial Conference, initially scheduled for June 20, 2019 at 10:00 am. The Parties understand that the Court wishes to reschedule the Conference for a date following the deadline for Defendants to respond to the complaint, and will confer and propose one or more alternative dates. In accordance with Rule 26(f) and (g), the Parties present their Joint Rule 26(f) Report as follows:

**(a) Initial Disclosures**

The Parties have agreed to exchange initial disclosures on or before June 27, 2019.

**(b) Subjects of Discovery**

<u>Plaintiffs</u>.  Plaintiffs anticipate needing party and third-party discovery regarding, *inter alia*, the following subjects, without limiting Plaintiffs' ability to take discovery on all relevant claims and defenses:

1.     The following transactions: (i) the spinoff of Orchard Supply Hardware Stores Corp; (ii) Sears Hometown and Outlet Stores rights offering; (iii) Sears Canada partial spinoff; (iv) Lands' End spinoff; (v) Seritage transaction; and (vi) related-party loans between Sears and ESL (collectively, the "Transactions"), including but not limited to the rationale, planning, analysis and execution of the Transactions, and any alternatives considered by Defendants or Sears' Board or management;

2.    The performance and operation of companies arising from and after the

Transactions, including: (i) Orchard Supply Hardware Stores Corp; (ii) Sears Hometown

and Outlet Stores; (iii) Sears Canada; (iv) Lands' End; and (v) Seritage;

3.    Sears' solvency, liquidity, performance, and financial condition at the time

of the Transactions;

4.    Sears business plans and financial projections;

5.    Valuations of Sears assets, including those transferred in the Transactions;

6.    ESL's investment procedures and decisions; and

7.    Fairholme's investment procedures and decisions.

Plaintiffs served their First Requests for Production of Documents on all

Defendants on May 24, 2019.  Plaintiffs anticipate serving third-party document subpoenas

shortly.

Defendants' contention that topics 6 and 7 are not relevant is without merit.  ESL

and Fairholme controlled the Debtors throughout the relevant period, and discovery relating to

their investment procedures and decisions relating to Sears is directly relevant to, among other

matters, their intent in approving the transactions at issue, which in turn is relevant to Plaintiffs'

claims for intentional fraudulent transfer.  As discussed below, Defendants' proposal to stay

discovery regarding the Orchard Supply Hardware Stores Corp. and Sears Hometown and Outlet

transactions pending a future motion to dismiss claims relating to those transactions would

unduly prolong the litigation.

<u>Defendants</u>.  Plaintiffs have been pursuing discovery for more than six months

pursuant to Rule 2004 at a cost of almost $11 million in preparation for the claims they have

pleaded.  In addition to obtaining and analyzing all of the Rule 2004 discovery Plaintiffs have

already taken, Defendants anticipate needing party and third-party discovery regarding subject Nos. 1 – 5 identified by Plaintiffs and, without limiting Defendants' ability to take discovery on all relevant claims and defenses, the following additional subjects:

1.      The extent and nature of the work and advice provided to (among others) Plaintiffs and Defendants by various professionals retained by Plaintiffs, Sears' Board and Subcommittees of the Board, including the Related Party Transaction Subcommittee, regarding (among other things) the Transactions;

2.      The value received by Plaintiffs in or related to the Transactions; and

3.      Whether (and, if so, the extent to which) the Transactions and related actions taken by Sears generated cash for Sears that it used to pay Sears' creditors and employees.

Defendants believe that certain of the subjects identified by Plaintiffs (specifically, subject Nos. 6 and 7, above) are not relevant to the claims and defenses in this case, will only lengthen the litigation, and make it more expensive, and are therefore not appropriate for discovery.  In addition, as discussed below, the Defendants named in the counts relating to the Orchard Supply Hardware Stores Corp. and Sears Hometown and Outlet Stores transactions plan to move to dismiss those counts as barred by the applicable statute of limitations and believe discovery on those transactions should be deferred until the Court has decided the motion.

Defendants intend to serve initial requests for production of documents before the June 20, 2019 Initial Pretrial Conference.

**(c) Electronically Stored Information ("ESI")**

The Parties anticipate presenting to the Court for its approval a proposed Protocol for the production of electronically stored information ("ESI") by or shortly after the Initial Pretrial Conference.

**(d) Privilege**

The Parties anticipate presenting to the Court for its approval a proposed

Protective Order governing the confidentiality of discovery materials by or shortly after the

Initial Pretrial Conference.  The Parties anticipate that the proposed Protective Order will include

a provision, in accordance with Rule 502(d), Fed. R. Evid., that the inadvertent disclosure of

privileged material shall not constitute waiver of any applicable privileges or discovery

protections.

The Parties intend to engage in discussions regarding the form of any privilege

log required by Rule 26(b)(5), Fed. R. Civ. P., but have not yet done so.

The Parties have engaged in preliminary discussions regarding whether and to

what extent Defendants, or any of them, are entitled to discovery of materials that Plaintiffs

claim are subject to Sears' attorney-client privilege or attorney work product, relating to the

Transactions, including materials that were furnished to some of the Defendants in connection

with their consideration of those Transactions.  The Parties anticipate engaging in further

discussion about these issues, and that motion practice in the context of specific discovery

requests may be required.  The Parties believe that presenting these issues to the Court would be

premature at this time.

**(e) Changes in the Limitations on Discovery, and Whether Discovery Should be Conducted
in Phases or Focused on Particular Issues**

The Parties agree that the presumptive limit of 10 depositions per side pursuant to

Rule 30(a), Fed. R. Civ. P. should be waived in view of the complexity of the case.  The Parties

have not agreed at this juncture on an alternative limit, if any, on the number of depositions.

Plaintiffs believe that the presumptive limit of 7 hours per deposition pursuant to

Rule 30(d) may have to be extended for certain depositions, and that any disputes should be

addressed on a witness-by-witness basis. Defendants believe that it is premature to evaluate whether the limit of 7 hours per deposition will need to be extended but agree that, should any dispute arise, it can be addressed on a witness-by-witness basis.

The Defendants named in Counts 1 and 2 of the complaint, which concern transactions (the spinoff of Orchard Supply Hardware Stores Corp. and the Sears Hometown and Outlet Stores rights offering) that took place more than six years before the Sears bankruptcy filing, intend to move to dismiss these counts on statute of limitations grounds. Given the amount of other discovery that will need to be conducted in this case on other matters, and the efficiencies that can be gained by focusing initially on discovery apart from these 2011 and 2012 transactions, Defendants believe that discovery should be phased, and any discovery related to these two transactions should be deferred pending the Court's decision on Defendants' forthcoming motion to dismiss.

Plaintiffs believe that staying discovery relating to the spinoff of Orchard Supply Hardware Stores Corp. and the Sears Hometown and Outlet Stores rights offering pending a motion to dismiss that has yet to be filed would unnecessarily prolong the litigation. The Defendants named in the counts of the complaint relating to those transactions are also named in counts relating to other transactions, and the sources of discovery relating to all transactions are substantially the same. Defendants' proposal would unduly complicate discovery and invite countless disputes about how to draw lines between discovery that is allowed and discovery that is stayed. And, regardless of how a motion addressed to the Orchard and Sears Hometown claims is resolved, discovery about those transactions is important background to the later transactions and, as evidence of a pattern of stripping valuable assets from the Debtors, is directly relevant to Defendants' intent in engaging in those later transactions.

While no final decisions have been made, Defendants may move to dismiss other counts of the complaint, but they do not seek a stay of all discovery pending the resolution of those motions.

The Parties have not agreed on a pretrial schedule.

1. <u>Plaintiffs' Position</u>

Plaintiffs believe that this case should be litigated and tried as expeditiously as possible, to reduce the cost of the litigation to the estates and to expedite any recovery for the benefit of creditors, and to that end have proposed a schedule that is designed to make the case ready for trial in the first quarter of 2020. By contrast, Defendants, despite bland assurances that they wish to resolve this litigation "sooner rather than later," propose a discovery plan that is transparently intended to delay these proceedings by any means necessary.  Under Defendants' proposed plan, fact discovery would not be completed for *18 months*—although Defendants have already received over 3 million pages of core documents from the most relevant parties and nonparties as well as eleven on-the-record interviews of key witnesses—and, although Defendants do not propose either a trial date or a date for a final pretrial conference, trial under their schedule would likely not commence until *2022*.  And, of course, that schedule does not take into account the months or years that could follow through appeals.  Consistent with prior statements by counsel for the ESL Defendants that the case could last for five years, Defendants' schedule appears to be based, not on a realistic assessment of the time needed to litigate this case, but rather on a strategic effort to impose unnecessary costs on the estates (and the post-confirmation trust) by dragging out the litigation and engaging in a war of attrition.  We respectfully submit that this approach is inappropriate.

Plaintiffs' proposed schedule is as follows:

1. Fact discovery to be concluded on or before November 27, 2019;

      2.   Expert discovery to be concluded on or before January 31, 2020;

      3.   Witness List to be exchanged on February 14, 2020;

      4.   Motions in limine to be filed on or before February 21, 2020;

      5.   The Court will hold a final pretrial conference on March 6, 2020;

      6.   Trial scheduled for March 20, 2020

Plaintiffs respectfully submit that their proposed schedule is reasonable and appropriate.

*First*, as Defendants acknowledge, they have already been provided with extensive discovery. Plaintiffs have produced to Defendants almost 3 million pages of documents that the Restructuring Subcommittee collected during its investigation, including the vast majority of the documents it collected from third parties. The Plaintiffs are reviewing the remaining third-party documents for privilege and expect to produce those additional documents on a rolling basis over the coming weeks. The documents that Plaintiffs have already produced were those identified by a comprehensive Technology Assisted Review analysis as those most likely to be relevant to the litigation. The third party sources of documents include the principal advisors to the Debtors in the transactions at issue, including Duff & Phelps and Cushman & Wakefield, the two advisors mentioned by Defendants as potential sources of discovery.

Plaintiffs have also produced to Defendants transcripts of the eleven non-privileged on-the-record interviews that the Restructuring Subcommittee conducted and associated exhibits. These far-ranging interviews were with directors and senior officers of Sears and ESL as well as key third party advisors, including Duff & Phelps and Cushman & Wakefield. Both the documents and the interview transcripts were previously provided to the ESL Defendants weeks ago as part of the Subcommittee investigation.

*Second*, each of the Defendants was intimately involved in the Transactions relevant to the claims asserted against them.  Moreover, several of the Defendants—including the ESL Defendants and the Seritage Defendants—were actively involved in the Subcommittee investigation,  and Plaintiffs' allegations are set forth in great detail in the 108-page complaint. Defendants cannot credibly claim that they are unfamiliar with the relevant facts.

*Third*,  Defendants are collectively represented by no fewer than eight major, highly sophisticated law firms that are more than capable of litigating this case on an aggressive schedule.

*Fourth*, Plaintiffs' proposed schedule is consistent with the schedules commonly adopted in other complex litigation.  For example, in *Akorn, Inc.* v. *Fresenius Kabi AG*, 2018 WL 4719347 (Del. Ch. Oct. 1, 2018),  the court ordered—and the parties complied with—an expedited trial schedule of less than 3 months from complaint to trial.  That case, as here, involved complex legal and factual issues, hundreds of thousands of documents, and expert testimony.  In roughly 11 weeks the parties collected more than 4 million documents from over 30 custodians in both Germany and the United States, produced hundreds of thousands of documents, conducted more than 50 depositions, and exchanged six experts on each side, totaling over 1,000 pages.  Plaintiffs' proposed schedule here is three to four times *longer* than the schedule in *Akorn*. Similarly, in *In re GSE Bonds Antitrust Litig.*, 19-cv-01704-JSR (S.D.N.Y.), Judge Rakoff set a trial date less than 15 months after plaintiffs filed a highly complex class action against twelve individual banks alleging a wide ranging antitrust conspiracy.  Defendants ask the Court to disregard these cases because they do not involve fraudulent transfer claims, but they do not dispute that the scope of discovery in both cases was similar to what is expected here.  And, contrary to Defendants' assertions, neither case involved

only a single transaction: *Akorn* involved numerous alleged violations of FDA regulations at multiple manufacturing and testing facilities over a period of more than six years, and *GSE* similarly involved transactions in thousands of different bonds CUSIPs over a 6-year period.

As noted, Defendants' proposed schedule does not reflect a realistic assessment of the time needed to litigate this case. Under Defendants' proposed schedule, trial is highly unlikely to commence before 2022 (assuming any party moves for summary judgment), and Defendants could then attempt to drag the case through additional years of appeals. Defendants' suggestion that "because this case will primarily be litigated as a post-confirmation matter, there is no pending transaction that requires" the schedule Plaintiffs propose, and their suggestion that the relevant precedents are other cases (such as *Tronox*, *Iridium*, and *Lyondell*) that took up to seven years from the filing of the complaint through trial, further illustrates Defendants' apparent delay strategy.

Defendants offer no persuasive explanation for their assertion that 18 months of fact discovery are needed, particularly where, as noted, they have already received millions of pages of core documents and extensive, on-the-record interviews of key witnesses, and have the benefit of the detailed allegations in the complaint. Defendants note Plaintiffs' estimate that 40– 50 depositions are likely to be required, but Defendants do not explain why those depositions could not be conducted in 2–3 months. Likewise, while there will undoubtedly be large volumes of relevant documents that have yet to be collected from parties and non-parties, a large number of witnesses to be deposed, and disputes about discovery (including privilege), those issues are universal in complex litigation. Defendants offer no reason that those matters cannot be addressed by the parties and the Court quickly and efficiently within the timetable Plaintiffs propose.

Defendants' argument that uncertainty surrounding whether the case is ultimately tried by a jury requires a longer discovery schedule is disingenuous. Defendants refuse to state their position on Plaintiffs' jury demand, or even to offer a date by which they will make such a determination. Defendants' contention that a trial cannot be scheduled until these issues are resolved does not justify adding months or years to the case schedule.

Defendants also note that Plaintiffs intend to amend the complaint. But that is no excuse for delay. Plaintiffs intend to file an amended complaint promptly, and, as we have advised Defendants, the amendments will not challenge additional transactions or materially change the underlying facts and circumstances or the scope of discovery.

Finally, an initial case schedule is not graven in stone. If developments in the case make it unfeasible to comply with the schedule despite diligent effort, any party is free to discuss extending the schedule with the other parties and, if necessary, to seek relief from the Court. By contrast, if the Court adopts the drawn-out schedule Defendants propose, absent extraordinary circumstances there is no realistic prospect for ever expediting it.

2. <u>Defendants' Position</u>

Defendants share the desire to remove the overhang of this litigation sooner rather than later, but also seek a reasonable schedule that will allow them fairly to defend the massive claims brought against them. As discussed below, Plaintiffs' proposed nine-month race to a potential jury trial is unprecedented for a multi-billion-dollar fraudulent transfer case, particularly one like this involving more than 20 transactions (five separate rights offerings or spin-offs and some 17 new loans or re-financings) based on events occurring over more than a decade and involving numerous different groups of Defendants who are not similarly situated. It is impractical, unworkable, and unfair. Substantial document discovery will be required, many witnesses (including many third-party witnesses, such as law firms and other professional

11

advisors) will need to be deposed, the Parties expect that there will be many experts, and there are likely to be material disputes over privilege and other issues along the way. Plaintiffs have already engaged in an extensive investigation—performed over six months and at the cost of almost $11 million (considering only the fees for which Plaintiffs' counsel has sought compensation during the period October 15, 2018 through April 30, 2019 under the task code "Conflict Matters: Investigations & Discovery"). Defendants (many of whom were not at all part of the Rule 2004 process) need time to catch up. And, notably, because this case will primarily be litigated as a post-confirmation matter, there is no pending transaction that requires the extraordinarily fast schedule that Plaintiffs propose.

The following alternative proposed schedule is both reasonable and expeditious in that it would make this case trial-ready materially earlier than other large fraudulent transfer cases that have gone to trial in this district. Plaintiffs' attempt, once again, to cast the ESL Defendants as deliberately seeking delay for delay's sake is, quite simply, baseless. Lest there is any confusion on the matter, the ESL Defendants wish to lay it to rest here: The ESL Defendants seek <u>no such delay</u>; rather they want resolution of this litigation on a schedule that permits a fair investigation of, and preparation of their defenses to, the claims. After setting forth such a schedule below, all Defendants explain why it is appropriate and reasonable.

<u>**Defendants' Proposed Schedule**</u>

1.    Amendment of complaint. Plaintiffs, who have indicated that they intend to amend their complaint, must file the amended complaint and add any defendants by <u>Friday, June 28, 2019</u>.

2.    Fact discovery (18 months). Fact discovery, including (a) written discovery, (b) document discovery, (c) deposition discovery, and (d) third-party discovery, shall conclude by <u>Friday, December 18, 2020</u>.

3.    Expert reports and discovery (4 ½ months (excluding the two weeks, encompassing Christmas and related holidays, at the end of 2020)). Expert

12

discovery, including (a) expert reports and (b) expert depositions, shall conclude by <u>Friday, May 14, 2021</u>.

- <u>Friday, January 15, 2021</u>:  Plaintiffs' opening expert reports due.

- <u>Friday, March 19, 2021</u>:  Defendants' expert reports due.

- <u>Friday, April 9, 2021</u>:  Plaintiffs' rebuttal expert reports due.

- <u>Friday, May 14, 2021</u>: Completion of expert depositions.

4.    Summary judgment.

- Leave filing date.  The date for any Party to seek leave to move for summary judgment shall be <u>Friday, May 21, 2021</u>.

- Briefing (if leave granted).  The schedule for briefing summary judgment shall be proposed by the Parties in seeking leave and thereafter set by the Court, but Defendants expect that the briefing can be completed in a few months (and that briefing on any motions in limine can occur on the same schedule).

5.    Pretrial conference date.

- If no leave for summary judgment is sought or granted, then <u>Friday, June 18, 2021</u>.

- If leave to move for summary judgment is granted, then <u>three weeks following the Court's decision on summary judgment</u>.

This proposed schedule is quite expeditious as compared to other major fraudulent transfer cases litigated through trial in this district.  Those cases have taken between 3 and 5 years to get to trial:

- *In re Tronox Inc.*, No. 09-ap-1198 (Bankr. S.D.N.Y., Gropper J.): 3 years.

- *In re Iridium Operating LLC*, No. 01-ap-2952 (Bankr. S.D.N.Y., Peck J.): 5 years, 3 months.

- *In re Lyondell Chem. Co.*, No. 09-ap-1375 (Bankr. S.D.N.Y., Gerber and Glenn JJ.): 5 years, 1 month (more than 7 years from the original complaint).

Defendants' proposed schedule would get this case trial ready much quicker than any of these other major cases, even though this case concerns numerous transactions spanning many years, whereas *Tronox*, *Iridium*, and *Lyondell* each involved principally a single transaction.  In contrast, neither of the two cases cited by Plaintiffs (*Akorn v. Fresnius* and *In re GSE Bonds Antitrust Litig.*) involved fraudulent transfer claims, and both concerned essentially a single transaction or issue—whether Akorn had breached its merger agreement with Fresnius, and whether the bank defendants had engaged in price fixing for Fannie Mae and Freddie Mac bonds—not numerous distinct transactions requiring discovery from dozens of third parties, as in this case.  Moreover, unlike this case and the other fraudulent transfer actions from this district discussed above, *Akorn* entailed claims for specific performance of a time-sensitive agreement (the parties' merger agreement) that necessitated an atypical and extraordinarily expedited schedule—from complaint to trial in a matter of 11 weeks.  And *GSE Bonds Antitrust Litig.* is still at the motion-to-dismiss stage—though plaintiffs filed their initial complaint in February, Judge Rakoff afforded defendants until today, June 13, to move to dismiss—is hardly typical for even antitrust cases, let alone for large fraudulent transfer actions (explaining why Plaintiffs have carefully selected two non-fraudulent transfer cases), and even the tentative, initial schedule there is materially longer than Plaintiffs request for this case.

The schedule Defendants propose, while materially shorter than that in the other major fraudulent transfer cases noted above, reflects the reality that Defendants need time for the fair and responsible preparation of their defenses, given the complexity and extensive breadth of the case Plaintiffs have pled.  The 108-page, 380-paragraph complaint asserts 12 counts (and, as discussed below, Plaintiffs have indicated that they are contemplating adding further counts) spanning an almost eight-year period back to 2011.  The factual allegations go back even further,

14

to 2006.  Plaintiffs challenge as fraudulent transfers and/or breaches of fiduciary duty five separate corporate transactions and seventeen different loan transactions and seek to recover billions of dollars.

All Parties agree that the discovery that will be necessary to investigate and defend against these disparate claims will be considerable.  For example, Plaintiffs have recently produced to Defendants three million pages of documents that they collected in their investigation during the Bankruptcy Rule 2004 process.  Defendants need to access, organize, and review those documents.  And this production does not reflect Plaintiffs' full collection of documents from the Rule 2004 process; Plaintiffs' counsel is now reviewing the rest of the documents they collected in contemplation of potentially making further productions to Defendants, to take place at some unspecified date or dates in the future.

The investigation that Plaintiffs' counsel undertook in the bankruptcy is not the end of the fact discovery that they seek for purposes of this litigation.  Plaintiffs continue to seek party and third-party discovery.  To that end, as Plaintiffs acknowledge, they have served document discovery on all Defendants.  Those Requests for Production are massive.  For example, as to Defendants Lampert and ESL, Plaintiffs served, respectively, 98 and 90 separate requests.  *See* Exhibits A, B.  The requests are broad in terms of subject matter and time, including individual requests purporting to seek documents dating back to 2005 and instructing more generally that the requests otherwise seek documents dating back to January 1, 2011. Defendants do intend to object to many of these requests and hope to be able to negotiate with Plaintiffs a more reasonable, tailored set of requests.  But those negotiations will themselves take time; the Parties may not agree, and motion practice may be required; and, in all events, the document collection, review, and production process will take substantial time.

The breadth of discovery that will be necessary is also evident in the number of critical third parties from whom discovery will be sought.  The adversary complaint references eight third-party entities—including Duff & Phelps, which provided solvency and fairness opinions, and Cushman & Wakefield, which valued the real estate in the Seritage transaction. The adversary complaint also references another seven third-party individuals, including several former Sears executives, from whom discovery is likely to be necessary.  While Defendants' investigation is still in its early phases, we estimate that third-party discovery will be needed from at least 20 third parties, including the law firms, real estate professionals, financial advisors, and bankers that advised Sears and many of the Defendants in connection with the Transactions. If any of the third parties object to or move to quash any subpoena for documents or testimony served on them, that could lead to further negotiations, briefing, and potential court decisions, all requiring more time.

The breadth of discovery is also evident in the number of depositions contemplated by the Parties.  During the Parties' Rule 26(f) conference, Plaintiffs' counsel estimated that 40 to 50 depositions would be needed and noted their view that for several of those depositions, they believe that more than one day (*i.e.*, more than seven hours) will be necessary.

Discovery is also likely to be complicated by various issues.  To give just one example, Defendants believe there will be significant disputes about attorney-client privilege in this case concerning, among other issues, whether Defendants may review and rely upon attorney-client communications constituting and related to the attorney advice they received, as officers and directors of Sears, on the Transactions at issue.  Although Plaintiffs have produced transcripts of some of the witness interviews that Plaintiffs took in the Rule 2004 process, they

have so far refused to provide the transcript of the interview of Scott Charles, a Wachtell, Lipton

partner who advised on many of the Transactions; have apparently withheld documents they

obtained on grounds of privilege; and have failed to provide any privilege log.

Another issue yet to be addressed is how discovery of Sears' documents is to take

place.  For example, while Plaintiffs' discovery on Defendants Lampert and ESL focuses solely

on those parties, the Requests for Production make clear that Plaintiffs also contemplate seeking

future discovery of Sears—including documents as to which Transform Co. took possession as a

result of the Asset Purchase Agreement approved by this Court—but that they believe at least

some such materials may be privileged.  In Instruction No. 1 of both sets of Requests for

Production, Plaintiffs' counsel instructs:  "To the extent that You have possession, custody, or

control of responsive documents that are or may be subject to a privilege belonging to Sears,

You shall not review such documents for purposes of responding to these requests or otherwise.

The parties shall meet and confer to develop a protocol for the production of responsive

documents subject to such a privilege."  Exhibits A, B (Instruction 1).  The development and

implementation of any such protocol, and the production of documents from legacy Sears files,

will require meaningful additional time.

In light of all of these factors, and the many other complications this case

presents, Defendants' proposed schedule is necessary for the litigation of this case.  Plaintiffs

complain that fact discovery should not take 18 months, but that is entirely realistic, given the

massive document requests Plaintiffs have served on Defendants, the likelihood of significant

negotiations and possible motion practice to narrow them and over the significant privilege

issues presented in this case, the documents that will be sought from dozens of third parties, and

Plaintiffs' acknowledgement that notwithstanding the months of investigation they have

conducted 40-50 depositions will still be necessary, mostly from third-party witnesses, many of whom can be expected to object or move to quash.  After the completion of discovery, Defendants' schedule provides a standard period (4 & ½ months) for expert reports and discovery—including affording Defendants a meaningful period to review Plaintiffs' initial reports and to allow their experts to respond—and then allows the Parties to seek leave to move for partial or complete summary judgment, all in accordance with the Federal Rules and this Court's practices.  In contrast, Plaintiffs' suggestion that all fact discovery, including that involving third parties, can be completed in a matter of a few months (by November 27, 2019) is fanciful; it provides an extremely truncated period for expert discovery (six weeks exclusive of the holidays) that would deny Defendants any real opportunity to review Plaintiffs' reports and respond; and it includes no period at all for summary judgment motions.

Finally, Defendants note two issues—one concerning the beginning of the case schedule and the other concerning the end—relevant to case management.  With respect to the beginning of the schedule, during the Rule 26(f) conference, Plaintiffs' counsel communicated to counsel for Defendants that they intend to amend their complaint (but do not commit to a date by which they will do so), based on their further discussions with counsel for the Unsecured Creditors Committee.  Plaintiffs' counsel acknowledged that those amendments may include the addition of new claims and the naming of additional defendants.  As a result, it may be appropriate for initial dispositive motion practice to await Plaintiffs' further beginning-of-case efforts.

With respect to the end of the case schedule, Plaintiffs seek to schedule a trial date.  Defendants have proposed a pretrial conference date, as provided for in this Court's form Scheduling and Pretrial Order, but not a trial date.  That is for an important reason.  As a legal

matter, it is not clear where or in what form any trial in this case will take place. Plaintiffs have demanded a jury trial. While Defendants continue to investigate whether that demand is appropriate or instead should be stricken to allow this Court to try Plaintiffs' claims in a bench trial, any jury trial could only take place in this Court in any event if all Parties consented. *See* 28 U.S.C. § 157(e). Otherwise, the trial would need to take place in the District Court, after the withdrawal of the reference by that Court on motion by a party. This issue cannot be settled until Plaintiffs have filed a complaint including all claims they intend to plead and naming all defendants they intend to sue, until any potential objections to Plaintiffs' jury demand are resolved, and, if there is to be a jury trial, until each Defendant has considered the options for trial and determined whether to consent to having that trial take place in this Court.

**(f)  Protective Order**

As noted, the Parties have agreed that a stipulated Protective Order under Rule 26(c), protecting the confidentiality of certain confidential, sensitive and proprietary information, is appropriate in this case and anticipate submitting a proposed order for the Court's approval by or shortly after the Initial Pretrial Conference.

*             *             *

The Parties are available to discuss any issues raised in this report at the Initial Pretrial Conference or at the Court's convenience.

19

Dated:    June 13, 2019

By:    */s/ Lewis R. Clayton*
       Paul M. Basta
       Kelley A. Cornish
       Lewis R. Clayton
       Susanna M. Buergel
       Robert A. Britton
       PAUL, WEISS, RIFKIND, WHARTON
       & GARRISON LLP
       1285 Avenue of the Americas
       New York, New York 10019
       Tel: 212-373-3000
       Fax: 212-757-3990

       *Counsel to Plaintiffs*
       *(as to all Defendants except*
       *Thomas J. Tisch)*

       */s/ Pauline K. Morgan*
       Pauline K. Morgan
       Ryan M. Bartley
       Michael S. Neiburg
       Travis Buchanan
       YOUNG CONAWAY STARGATT &
       TAYLOR, LLP
       1270 Avenue of the Americas, Suite
       2201
       New York, New York 10020
       Tel: (212) 332-8840
       Fax: (212) 332-8855

       *Counsel to Plaintiffs*
       *(as to Defendant Thomas J.*
       *Tisch)*

By:        */s/ Philip D. Anker*
           Philip D. Anker
           Noah A. Levine
           WILMER CUTLER PICKERING
           HALE AND DORR LLP
           7 World Trade Center
           250 Greenwich Street
           New York, NY 10007
           Tel: 212-230-8800
           Fax: 212-230-8888

           *Counsel for Edward Scott "Eddie"
           Lampert, ESL Investments, Inc., RBS
           Partners LP, CRK Partners LLC, SPE
           Master I L.P., ESL Partners L.P., SPE I
           Partners L.P., RBS Investment
           Management LLC, ESL Institutional
           Partners L.P., ESL Investors, L.L.C.,
           JPP LLC, JPP II LLC*


By:        */s/ Andrew J. Frackman*
           Andrew J. Frackman
           Daniel S. Shamah
           Brad Elias
           Lauren Wagner
           O'MELVENY & MYERS LLP
           Times Square Tower, 7 Times Square
           New York, New York 10036
           Tel: 212-326-2000

           *Counsel for Defendant Thomas Tisch*

By:        */s/ Robert A. Sacks*
           Robert A. Sacks
           Brian D. Glueckstein
           SULLIVAN & CROMWELL LLP
           125 Broad Street
           New York, New York 10004
           Tel: 212-558-4000
           Fax: 212-558-3588

           *Counsel for Defendant Steven Mnuchin*

By:     */s/ Josh Greenblatt*
        Josh Greenblatt
        Mark Holscher
        KIRKLAND & ELLIS LLP
        601 Lexington Avenue
        New York, New York 10022
        Tel: 212-446-4800


        *Counsel for Defendant Alesia Haas*

By:     */s/ Michael Shuster*
        Michael Shuster
        Vincent Levy
        HOLWELL SHUSTER & GOLDBERG
        LLP
        425 Lexington Avenue
        New York, New York 10017
        Tel: 646-837-5151


        *Counsel for Defendant Kunal Kamlani*

By:     */s/ Brad E. Scheler*
        Brad E. Scheler
        Scott B. Luftglass
        Michael C. Keats
        Peter B. Siroka
        FRIED, FRANK, HARRIS, SHRIVER
        & JACOBSON LLP
        One New York Plaza
        New York, New York 10004
        Tel: 212-859-8000
        Fax: 212-859-4000


        *Counsel for Defendants Seritage Growth
        Properties, Inc., Seritage Growth
        Properties, L.P., Seritage KMT
        Mezzanine Finance LLC, Seritage SRC
        Mezzanine Finance LLC, Seritage KMT
        Finance LLC, Seritage SRC Finance
        LLC, Seritage GS Holdings LLC,
        Seritage SPS Holdings LLC, and
        Seritage MS Holdings LLC*

By:      */s/ Mark J. Hyland*_____
         Mark J. Hyland
         Robert J. Gayda
         SEWARD & KISSEL LLP
         One Battery Park Plaza
         New York, New York 10004
         Tel: 212-574-1200
         Fax: 212-480-8421

         *Counsel for Defendants Fairholme*
         *Capital Management LLC and Bruce*
         *Berkowitz*

By:      */s/ Gregory P. Joseph*_____
         Gregory P. Joseph
         Courtney A. Solomon
         JOSEPH HAGE AARONSON LLC
         485 Lexington Avenue
         Tel: 212-407-1200
         Fax: 212-407-1299

         *Counsel for Defendant Cesar L. Alvarez*