# WILMERHALE

September 23, 2020

**Philip D. Anker**

+1 212 230 8890 (t)
+1 212 230 8888 (f)
philip.anker@wilmerhale.com

**VIA ELECTRONIC MAIL & ECF**

Hon. Robert D. Drain
United States Bankruptcy Court
Southern District of New York
United States Courthouse
300 Quarropas Street
White Plains, New York 10601-4150

Re:   *Sears Holdings Corp., et al. v. Lampert, et al.*, Adv. Proc. No. 19-08250 (RDD)

Dear Judge Drain:

At the close of oral argument on Defendants' motions to dismiss, the Court made clear that it was neither "asking for" nor "looking for any further briefs." Aug. 31, 2020 Hr'g Tr. at 145:17-21. Yet, without seeking leave, Plaintiffs filed another letter brief this past Monday, September 21, 2020. On behalf of the ESL Defendants, we seek leave to submit this short response.

Plaintiffs' letter purports to respond to Defendants' argument that Plaintiffs' claims concerning the Seritage Subscription Rights are barred as a matter of law by 11 U.S.C. § 546(e), but it raises nothing relevant or new that was not presented to the Court in the parties' briefs and argument.

*First*, Plaintiffs' letter ignores the law—the words of the statute and the controlling interpretation of it by the Second Circuit in *Tribune*.[1] Plaintiffs' unstated premise is that, if Sears retained more than one agent (such as Georgeson, Inc.), or if Computershare Inc. participated in some way by, for instance, processing some payments related to the Seritage Transaction, then the § 546(e) safe harbor would somehow be rendered inapplicable. Neither point has merit. Even if Plaintiffs were to move for leave to amend their complaint a second time to add such allegations (notably, they have not), those amendments would be legally futile.

The relevant questions under the qualifying entity prong of § 546(e) are (1) whether Sears retained a "financial institution" as an agent, and (2) whether that agent was acting for Sears "in connection with a securities contract." 11 U.S.C. § 101(22)(A). *See* ESL Reply Br. at 11-18. It

---

[1]   *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66 (2d Cir. 2019).

**WilmerHale**

Hon. Robert B. Drain
September 23, 2020
Page 2

is legally irrelevant whether Sears *also* retained *other* agents that were not "financial institutions," and which agent processed which payments.

As to the first question, the documents submitted with ESL's motion to dismiss, which this Court may consider in deciding the motion, unequivocally demonstrate that Sears retained Computershare Trust Company, N.A. ("CTC Trust") to act as the Subscription Agent in connection with the Seritage Rights Offering. Whether Sears *also* retained Georgeson (to serve in the separate role of Information Agent) is irrelevant.

As to the second question, whether Computershare Inc.—a party related to CTC Trust—processed some wire payments related to the Seritage Transaction is also irrelevant. The Seritage Subscription Agent Agreement[2] shows that Sears retained both Computershare Inc. and CTC Trust in connection with the Seritage Rights Offering, a securities transaction. So, the fact that the former processed some wire payments is wholly unsurprising and has no bearing on the controlling legal questions under the statute. In *Tribune*, the Second Circuit relied on the same types of agreements, where the debtor had also retained both CTC Trust and certain of its affiliates, in rejecting on the pleadings the same types of arguments that Plaintiffs make here. *See* ESL Reply Br. at 13.

*Second*, Plaintiffs' letter introduces nothing new. As noted, the Seritage Subscription Agent Agreement already shows that both Computershare Inc. and CTC Trust would act as Sears' agents in connection with the Rights Offering. And, as to Georgeson, the basic transaction documents that ESL submitted with its motion to dismiss already made plain that it served in a distinct role in the Seritage Rights Offering. For example, the Prospectus identifies Georgeson as the "Information Agent" and CTC Trust as the "Subscription Agent."[3] Likewise, the Subscription Rights Certificate instructed Sears shareholders that, to exercise their rights, they should "complete all applicable information and return to the Subscription Agent: COMPUTERSHARE TRUST COMPANY, N.A." while, to obtain more information about the offering, "[y]ou are encouraged to contact Georgeson, Inc.," "the information agent."[4]

In short, Plaintiffs' letter provides nothing relevant or new regarding the legal issues before the Court concerning § 546(e). If (contrary to Defendants' alternative argument) the Court finds that the distribution of the Seritage Subscription Rights constituted a transfer of Sears' property, the Court should find Plaintiffs' claims barred by § 546(e).

---

[2]    Levine Decl. Ex. 13.

[3]    Levine Decl. Ex. 15 (Seritage Growth Properties Prospectus), at 30; *see also id.,* at 170 ("[Sears Holdings] will pay all reasonable fees charged by Computershare Trust Company, N.A., as the subscription agent and Georgeson Inc., as the information agent.").

[4]    Levine Decl. Ex. 16 (Seritage Growth Properties Subscription Rights Certificate for Seritage Growth Properties Common Shares), at 1-2.

WILMERHALE

Hon. Robert B. Drain
September 23, 2020
Page 3

Respectfully submitted,

*Philip D. Anker*
_____

Philip D. Anker
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8800

*Attorneys for Edward S. Lampert, ESL Investments, Inc., RBS Partners LP, SPE Master I LP, ESL Partners LP, SPE I Partners LP, RBS Investment Management LLC, ESL Institutional Partners LP, ESL Investors LLC, JPP LLC, and JPP II LLC*

cc:    All Counsel of Record (via e-mail)