March 16, 2021

**VIA EMAIL AND ECF**

The Honorable Judge Drain
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re:    *Sears Holdings Corp., et al. v. Lampert, et al.*, Case No. 19-08250 (RDD) ("First Action") and *Sears Holdings Corp., et al. v. Tisch, et al.*, Case No. 20-07007 (RDD) ("Second Action")

Dear Judge Drain:

We write on behalf of Plaintiffs in the above-captioned First and Second Actions.  At the conclusion of oral argument on the Defendants' motions to dismiss in the Second Action, the Court inquired about the status of the proceedings in *Tribune Company Fraudulent Conveyance Litigation*, Case No. 13-3992-cv(L) ("*Tribune II*"), and in particular with respect to the petition for *certiorari* pending at the United States Supreme Court.  As Mr. Zensky and Mr. Anker advised the Court, the Solicitor General's office had not yet responded to the Supreme Court with its views on the case.

As things would have it, later in the day the Acting Solicitor General did file a brief on behalf of the United States in respect of the matter, a copy of which is attached (the "U.S. Brief").  Significantly, the United States has advised the Supreme Court that the Second Circuit completely misapplied the Section 546(e) safe harbor, including its decision as to the definition of "financial institution" and preemption of state law.  As to the former issue, the brief of the United States states as follows:

- "The Court's interpretation of the Bankruptcy Code's definition of 'financial institution' is also questionable."  U.S. Brief at 7.

- "[The Court's] understanding of Section 101(22)(A) would render *Merit Management* a virtual nullity"  *Id.* at 19.

- "[T]he court of appeals' approach would largely negate the precisely crafted limits that Congress placed in Section 546(e)."  *Id.* at 20.

The Honorable Judge Drain
March 16, 2021
Page 2

- The court of appeals "ignored these consequences of its ruling" and "did not consider whether there was a better way to harmonize the definition of financial institution with the limits that Congress sought to place on Section 546(e)'s coverage." *Id.* at 21.

Despite the flaws in the Court of Appeals' analysis, the United States advised against granting *certiorari* to the Tribune Petitioners, for two reasons. First, and most relevant here, the United States notes that there is a dispute about the facts in *Tribune II* – i.e., the question of which Computershare entity did what and thus whether or not the customer/agent requirements were satisfied – that was never addressed by the District Court because *Merit Management* came down while *Tribune* was already on appeal. U.S. Brief at 22. While the Supreme Court cannot conduct further fact-finding on review, this Court obviously faces no such limitation. Plaintiffs respectfully submit there is no good reason to prevent the development of the record on the role and conduct of the various Computershare entities (and if deemed relevant, the expectations of the parties) in both the Lands' End and Seritage transactions before this Court addresses the Defendants' safe harbor defenses and applies the subject statutory provisions. Indeed, as previously reported to the Court at oral argument in the First Action (s*ee* Aug. 19, 2020 Hr'ing Tr. at 186:9-13; 187:6-10; 191:23-25) and by way of follow-up letter dated September 21, 2020 [ECF 220], substantial document discovery on the role/conduct of the Computershare entities in respect of the Seritage transaction has already been completed (establishing that the relevant activities were conducted by Computershare entities other than the Trust company), and Plaintiffs in the Second Action are preparing to subpoena the same materials in respect of the Lands' End transaction, as permitted by the Consolidation and Amended Scheduling Order entered yesterday [ECF 235].

The United States also notes that a separate Tribune-related appeal is now pending at the Second Circuit. This appeal, brought by the Tribune Litigation Trustee (as opposed to individual Tribune Creditors), also raises the "financial institution" question and is before a different panel than the earlier *Tribune* ruling. It is, of course, unknown what effect the views of the United States may have on that panel, or when a ruling is expected (argument was conducted in August 2020).[1]

We are happy to answer any questions the Court may have.

---

[1] Judge Winter was on the panel that decided *Tribune II* and also one of the three Judges assigned to the Litigation Trustee's appeal. As this Court is no doubt aware, Judge Winter passed away in December and to date no replacement Judge has been appointed.

The Honorable Judge Drain
March 16, 2021
Page 3

Sincerely,

**AKIN GUMP STRAUSS HAUER &
FELD LLP**

By: */s/ David M. Zensky*
David M. Zensky
Joseph L. Sorkin
Dean L. Chapman Jr.
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
dzensky@akingump.com
jsorkin@akingump.com
dchapman@akingump.com

Lacy M. Lawrence
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
llawrence@akingump.com

*Counsel to Plaintiffs in the First Action*

**ASK LLP**

By: */s/ Joseph L. Steinfeld, Jr.*
Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Brigette G. McGrath, Esq., NY SBN 4962379
Kara E. Casteel, Esq. MN SBN 0389115
Richard J. Reding, Esq. MN SBN 0389945
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
Telephone: (651) 406-9665
Fax: (651) 406-9676
jsteinfeld@askllp.com
bmcgrath@askllp.com
kcasteel@askllp.com
rreding@askllp.com

Edward E. Neiger, Esq.
60 East 42nd Street, 46th Floor
New York, NY 10165
Telephone: (212) 267-7342
eneiger@askllp.com

*Counsel to Plaintiffs in the Second Action*

cc:  All Counsel of Record (via email)

No. 20-8

# In the Supreme Court of the United States

———————

DEUTSCHE BANK TRUST COMPANY AMERICAS, ET AL.,
PETITIONERS

*v.*

ROBERT R. MCCORMICK FOUNDATION, ET AL.

———————

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT*

———————

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

———————

ELIZABETH B. PRELOGAR
  *Acting Solicitor General
    Counsel of Record*
MALCOLM L. STEWART
  *Deputy Solicitor General*
SARAH E. HARRINGTON
  *Deputy Assistant Attorney
    General*
COLLEEN E. ROH SINZDAK
  *Assistant to the Solicitor
    General*
MICHAEL S. RAAB
KEVIN B. SOTER
  *Attorneys*

  *Department of Justice
  Washington, D.C. 20530-0001
  SupremeCtBriefs@usdoj.gov
  (202) 514-2217*

## QUESTIONS PRESENTED

In various circumstances, creditors may assert state-law causes of action to "avoid" certain asset transfers and thereby recoup debts owed to the creditors.  After a bankruptcy case has been commenced, the Bankruptcy Code likewise authorizes the trustee to avoid specified types of transfers in order to augment the estate.  See, *e.g.*, 11 U.S.C. 544(b)(1), 548(a)(1).  Section 546(e) of the Code provides (as relevant here) that "the trustee may not avoid  * * *  a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, * * * that is made before the commencement of the [bankruptcy] case, except under section 548(a)(1)(A) of this title."  11 U.S.C. 546(e).  The term "financial institution" is defined to include, in addition to banks and similar entities, the "customer" of a bank (or similar entity) when that entity "is acting as agent or custodian" for the "customer" "in connection with a securities contract."  11 U.S.C. 101(22)(A).  The questions presented are as follows:

1.  Whether Section 546(e) impliedly preempts fraudulent-transfer suits brought by creditors under state law, where those suits seek to avoid transfers that Section 546(e) would preclude a trustee from avoiding.

2.  Whether the Bankruptcy Code's definition of "financial institution" encompasses the transferor in this case.

(I)

## TABLE OF CONTENTS

Page

Interest of the United States....................................................... 1
Statement ................................................................................. 1
Discussion ............................................................................... 7
   I.   Although the court of appeals erred in holding that
      petitioners' claims are preempted, that holding
      does not warrant this Court's review ........................... 8
      A.  The Bankruptcy Code does not preempt
          petitioners' state-law avoidance claims.................. 8
      B.  This Court's review of the preemption
          questions is not warranted .................................... 15
   II.  The Second Circuit's interpretation of the term
      "financial institution" in the Bankruptcy Code does
      not warrant this Court's review .................................. 19
Conclusion .............................................................................. 23

## TABLE OF AUTHORITIES

Cases:

    *Arizona* v. *United States*, 567 U.S. 387 (2012) ..................... 9
    *BFP* v. *Resolution Trust Corp.*, 511 U.S. 531 (1994)........... 1
    *Chamber of Commerce of the U.S.* v. *Whiting*,
       563 U.S. 582 (2011)................................................... 8
    *City of Chicago* v. *Fulton*, 141 S. Ct. 585 (2021)................ 11
    *FDIC* v. *Hirsch* (*In re Colonial Realty Co.*),
       980 F.2d 125 (2d Cir. 1992) ....................................... 12
    *Hartford Underwriters Ins. Co.* v. *Union Planters
       Bank, N. A.*, 530 U.S. 1 (2000)................................. 8, 10, 11
    *Hughes* v. *Talen Energy Mktg., LLC*,
       136 S. Ct. 1288 (2016) ............................................... 8
    *Merit Mgmt. Grp., LP* v. *FTI Consulting, Inc.*,
       138 S. Ct. 883 (2018) ...................................5, 6, 7, 13, 14, 20

(III)

IV

Cases—Continued:                                                    Page

*Official Comm. of Unsecured Creditors of Quebecor
World (USA) Inc.* v. *American United Life Ins.
Co. (In re Quebecor World (USA) Inc.)*, 719 F.3d 94
(2d Cir. 2013), cert. denied, 571 U.S. 1197 (2014) .......... 4, 5
*PAH Litig. Trust* v. *Water St. Healthcare Partners
L.P. (In re Physiotherapy Holdings, Inc.)*,
No. 13-12965, 2016 WL 3611831 (Bankr. D. Del.
June 20, 2016) ........................................................... 16
*PHP Liquidating, LLC* v. *Robbins*, 291 B.R. 603
(Bankr. D. Del. 2003) ................................................. 16
*Ritzen Grp., Inc.* v. *Jackson Masonry, LLC*,
140 S. Ct. 582 (2020) ................................................. 13

Statutes and rule:

11 U.S.C. 101(22)(A) ..........................................6, 19, 20, 21, 22
11 U.S.C. 362(a) ..................................................... 3, 10, 11, 12
11 U.S.C. 362(a)(1).................................................... 11, 12
11 U.S.C. 362(a)(6).................................................... 11, 12
11 U.S.C. 362(d) ........................................................... 13
11 U.S.C. 544 ..........................................................6, 10
11 U.S.C. 544(a)(1).......................................................... 14
11 U.S.C. 544(b)(1)................................................ 2, 9, 10, 11
11 U.S.C. 544(b)(2)......................................................... 8, 9
11 U.S.C. 546(e) ....................................................... *passim*
11 U.S.C. 548(a)(1) ............................................................ 2
11 U.S.C. 548(a)(1)(A) .......................................... 2, 3, 13, 15
11 U.S.C. 548(a)(1)(B) ......................................................... 2
11 U.S.C. 1107 ................................................................. 8
11 U.S.C. 1141(c)............................................................. 16
11 U.S.C. 1141(d)(1)(A) ..................................................... 16
Sup. Ct. R. 10(a)............................................................. 16

V

Miscellaneous:                                                      Page

37 Am. Jur. 2d *Fraudulent Conveyances and*
  *Transfers* (Supp. 2021) ........................................................ 1

Uniform Voidable Transactions Act (2014):

  § 4(a) .................................................................................. 2

  § 7 ...................................................................................... 2

# In the Supreme Court of the United States

---

No. 20-8

DEUTSCHE BANK TRUST COMPANY AMERICAS, ET AL.,
PETITIONERS

*v.*

ROBERT R. MCCORMICK FOUNDATION, ET AL.

---

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT*

---

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

---

### INTEREST OF THE UNITED STATES

This brief is submitted in response to the Court's order inviting the Acting Solicitor General to express the views of the United States. In the view of the United States, the petition for a writ of certiorari should be denied.

### STATEMENT

1. a. Since at least the Sixteenth Century, the common law has treated as tortious conduct a debtor's transfer of her assets to a third party in a way that undermines her creditors' rights. *BFP* v. *Resolution Trust Corp.*, 511 U.S. 531, 540-541 (1994). The States have generally adopted this common-law tort rule by enacting the Uniform Voidable Transactions Act or one of its precursors. 37 Am. Jur. 2d *Fraudulent Conveyances and Transfers* § 4 (Supp. 2021). Under these

(1)

2

state laws, a creditor seeking to satisfy a claim against
a debtor may bring an "avoidance" action against the
third party to whom the debtor transferred her assets.
If the action succeeds, the transfer may be "avoided"
(*i.e.*, set aside), and the creditor may recoup the trans-
ferred assets in order to collect the debt owed to it. See,
*e.g.*, Uniform Voidable Transactions Act § 7, at 33-36
(2014).

There are essentially two varieties of fraudulent-
transfer claims.   An *intentional* fraudulent-transfer
claim requires proof that the debtor actually intended
to defraud her creditors.   A *constructive* fraudulent-
transfer claim typically requires proof that the trans-
feror received less than reasonably equivalent value in
exchange for the transfer and that the debtor was insol-
vent before the transfer, or was rendered insolvent by
the transfer itself.   See, *e.g.*, Uniform Voidable Trans-
actions Act § 4(a), at 19.

b. The Bankruptcy Code authorizes the bankruptcy
trustee to avoid fraudulent transfers under specified
circumstances.  Section 544(b)(1) authorizes a trustee to
avoid certain transfers that are "voidable under appli-
cable law by a creditor holding an unsecured claim."  11
U.S.C. 544(b)(1).  Section 548(a)(1) establishes a federal
cause of action by which the trustee can avoid either an
intentional fraudulent transfer, 11 U.S.C. 548(a)(1)(A),
or a constructive fraudulent transfer, 11 U.S.C.
548(a)(1)(B).

The Bankruptcy Code also imposes several limita-
tions on the trustee's avoidance power.  As most rele-
vant here, Section 546(e) provides that "the trustee may
not avoid * * * a transfer made by or to (or for the ben-
efit of) a commodity broker, forward contract mer-

3

chant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, * * * that is made before the commencement of the [bankruptcy] case, except under section 548(a)(1)(A) of this title." 11 U.S.C. 546(e).

2. a. In 2007, the Tribune Media Company (Tribune) went through a leveraged buyout. Pet. App. 10a. Thousands of shareholders, including respondents, received payments totaling more than $8 billion in exchange for their Tribune stock. *Id.* at 10a-11a, 130a. To effectuate the buyout, Tribune retained Computershare Trust Company, N.A., a trust company and bank, to act as the "Depositary" for Tribune's payments to its shareholders and the shareholders' transfers of stock to Tribune. *Id.* at 23a-29a.

The buyout did not prevent Tribune's continued decline, and the company filed for bankruptcy in 2008. Pet. App. 11a. The bankruptcy court authorized an Official Committee of Unsecured Creditors (Committee) to stand in the shoes of a bankruptcy trustee. *Id.* at 12a. In 2010 the Committee filed an avoidance action under Section 548(a)(1)(A) against Tribune's former stockholders, alleging that the payments to stockholders in connection with the leveraged buyout constituted intentional fraudulent transfers. *Id.* at 11a-12a.

In 2011, unsecured creditors acting in their own capacities sought to bring state-law claims to avoid the same transfers under a theory of constructive fraud. Pet. App. 12a-13a. Under 11 U.S.C. 362(a), creditor actions to recover debts owed by the bankrupt entity are generally stayed during the pendency of the bankruptcy case, but the creditors asked the bankruptcy court to lift the stay to permit them to pursue their state-law claims. Pet. App. 13a. The court temporarily

4

lifted the stay to allow the creditors to file complaints. *Ibid.* When the court ultimately confirmed Tribune's reorganization plan, it included a provision that allowed the creditors to pursue state-law constructive fraudulent-transfer claims related to the leveraged buyout. *Id.* at 14a. That permission did not extend to intentional-fraud claims, which had been pursued by the Committee acting as trustee and which would be advanced post-bankruptcy by the Litigation Trust taking the place of the Committee. *Ibid.*

b. In courts around the country, petitioners filed state-law constructive fraudulent-transfer actions against Tribune's former shareholders, including respondents. Pet. App. 12a. Those actions were consolidated with the Litigation Trust's ongoing intentional-fraud claims in a multi-district litigation proceeding in the United States District Court for the Southern District of New York. *Id.* at 14a. Respondents moved to dismiss petitioners' constructive-fraud claims, arguing that petitioners lacked statutory standing and that their claims were preempted by Section 546(e). *Id.* at 15a. The district court accepted respondents' statutory-standing argument but rejected the preemption claim. *Ibid.*

The court of appeals affirmed on alternative grounds, holding that Section 546(e) preempted petitioners' claims. Pet. App. 75a-127a. The Second Circuit had previously construed Section 546(e) to apply whenever a bankruptcy trustee seeks to avoid a transfer made in connection with a securities contract, so long as the overall transaction involved an intermediate transfer to a "financial institution." *Official Comm. of Unsecured Creditors of Quebecor World (USA) Inc.* v. *American United Life Ins. Co.* (*In re Quebecor World* (USA) *Inc.*),

5

719 F.3d 94, 100 (2013), cert. denied, 571 U.S. 1197 (2014).
Under *Quebecor*, Tribune's payments to its stockhold-
ers qualified for Section 546(e)'s safe harbor because
the transfers had been made *through* Computershare, a
"financial institution." See Pet. App. 84a, 118a. The
court of appeals held that, if Section 546(e) would bar a
trustee's suit to avoid a particular transfer, a creditor's
state-law suit to avoid that transfer is preempted by
federal law. *Id.* at 92a-127a.

c.  In 2016, petitioners filed a petition for a writ of
certiorari.  See 139 S. Ct. 2050 (2019) (No. 16-317).
While that petition was pending, this Court held that
Section 546(e)'s safe harbor applies only when the over-
all transfer the trustee seeks to avoid is "made by or to
(or for the benefit of)" a "financial institution" or other
entity enumerated in Section 546(e). *Merit Mgmt. Grp.,
LP* v. *FTI Consulting, Inc.*, 138 S. Ct. 883, 892 (2018).
By holding that Section 546(e) does "not protect trans-
fers in which financial institutions served as mere con-
duits," *ibid.*, that decision abrogated prior rulings like
the Second Circuit's decision in *Quebecor*, see *id.* at 892
n.6.

After *Merit Management* was decided, Justices
Kennedy and Thomas issued a statement respecting the
2016 petition for a writ of certiorari in this case.  Pet.
App. 74a.  The statement observed that the Court might
lack a quorum and that consideration of the petition
would be deferred to allow the court of appeals "to con-
sider whether to recall the mandate" in light of *Merit
Management. Ibid.*

d.  The court of appeals recalled the mandate and is-
sued an amended opinion that once again affirmed the
district court's dismissal of petitioners' claims.  Pet.
App. 1a-68a.

6

The court of appeals first held that, despite *Merit Management*, Tribune's payments to stockholders were covered by Section 546(e) because Tribune itself was a "financial institution" during the leveraged buyout. The Bankruptcy Code defines the term "financial institution" to include the "customer" of a bank (or similar entity) that "is acting as agent or custodian" for the "customer" "in connection with a securities contract." 11 U.S.C. 101(22)(A); see *Merit Mgmt.*, 138 S. Ct. at 890 n.2 (discussing Section 101(22)(A)). The court of appeals explained that, to effectuate the leveraged buyout, Tribune had used Computershare (a "financial institution") as its "Depositary." Pet. App. 25a-31a. The court concluded that, "in connection with" the leveraged buyout, Tribune therefore was Computershare's "customer" and Computershare was Tribune's "agent," so that Tribune's payments to stockholders fell within Section 546(e)'s safe harbor. *Id.* at 26a-30a.

The court of appeals then reiterated its prior holding that, in circumstances where Section 546(e) would prohibit the trustee from avoiding a particular transfer, the Bankruptcy Code preempts state-law suits by creditors seeking to avoid the same transfer. Pet. App. 31a-32a. Applying principles of "conflict" preemption, the court first suggested that allowing creditors to pursue *any* state-law avoidance claims after a bankruptcy petition has been filed could thwart the congressional purposes embodied in 11 U.S.C. 544. Pet. App. 31a, 36a-51a. The court ultimately found it unnecessary, however, to decide whether every state-law avoidance action is preempted. *Id.* at 51a. Instead, it relied on a narrower perceived conflict between petitioners' claims and the objectives of Section 546(e). *Id.* at 52a-61a. The court believed that Congress had enacted Section 546(e) to

7

eliminate uncertainty in the securities markets by en-
suring that certain securities transactions may not be
unwound even if a party to the transaction becomes in-
solvent. *Id.* at 52a. The court concluded that allowing
petitioners' state-law avoidance actions to go forward
would undermine that congressional purpose because
petitioners seek to unwind the very transfers that Sec-
tion 546(e) protects. *Id.* at 52a-61a.

### DISCUSSION

The court of appeals erred in finding that creditors'
state-law avoidance actions are preempted by Section
546(e). The court's interpretation of the Bankruptcy
Code's definition of "financial institution" is also ques-
tionable. Neither of those issues, however, warrants
the Court's review at this time. Neither of the questions
presented is the subject of a circuit conflict, and this
Court considered a related question regarding Section
546(e) just three Terms ago. See *Merit Mgmt. Grp., LP*
v. *FTI Consulting, Inc.*, 138 S. Ct. 883 (2018). Even if
the Court's review of one or both of these issues ulti-
mately becomes necessary, that review would likely
benefit from additional analysis of the questions by
other courts of appeals.

Petitioners urge this Court to grant certiorari to ad-
dress whether a presumption against preemption ap-
plies when a Bankruptcy Code provision is asserted to
preempt state law. This Court does not generally grant
review, however, to consider that sort of abstract ques-
tion regarding proper interpretive methodology. In any
event, the alleged conflict is illusory because the court
below did not treat the presumption against preemption
as categorically inapplicable to bankruptcy suits involv-
ing creditor rights. The petition for a writ of certiorari
should be denied.

8

## I. ALTHOUGH THE COURT OF APPEALS ERRED IN HOLDING THAT PETITIONERS' CLAIMS ARE PREEMPTED, THAT HOLDING DOES NOT WARRANT THIS COURT'S REVIEW

### A. The Bankruptcy Code Does Not Preempt Petitioners' State-Law Avoidance Claims

The "purpose of Congress is the ultimate touchstone in every pre-emption case." *Hughes* v. *Talen Energy Mktg., LLC*, 136 S. Ct. 1288, 1297 (2016) (citation omitted). Courts therefore begin by "focus[ing] on the plain wording" of the statute, "which necessarily contains the best evidence of Congress' preemptive intent." *Chamber of Commerce of the U.S.* v. *Whiting*, 563 U.S. 582, 594 (2011) (citation omitted).

1. The text of Section 546(e) does not express an intent to preempt state-law avoidance claims brought by creditors. The provision states that "the trustee may not avoid" certain transfers "made * * * in connection with a securities contract," 11 U.S.C. 546(e), but it does not address creditor suits. When a Bankruptcy Code provision refers specifically to "the trustee," that provision applies only to the trustee (or the debtor in possession, who has the rights and powers of a trustee, see 11 U.S.C. 1107) and not to other parties. *Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.*, 530 U.S. 1, 6-7 & n.3 (2000).[1]

The absence of express preemptive language in Section 546(e) is particularly significant when that provision is contrasted with Section 544(b)(2) of the Code.

---

[1] In *Hartford Underwriters*, the Court declined to consider whether a bankruptcy court may allow an interested party "to act in the trustee's stead in pursuing recovery under § 506(c)," observing that the propriety of such "derivative" actions was not before it. 530 U.S. at 13 n.5.

9

That provision states that a trustee may not avoid certain transfers that qualify as charitable contributions. 11 U.S.C. 544(b)(2). Section 544(b)(2) further provides that "[a]ny claim by any person to recover a transferred contribution * * * shall be preempted by the commencement of the case." *Ibid.* The absence of similar language in Section 546(e) reinforces the conclusion that Section 546(e) does not preempt claims brought by creditors.

2. The court of appeals held that petitioners' claims were impliedly preempted. Pet. App. 31a & n.13. A federal statute may impliedly preempt state law that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona* v. *United States*, 567 U.S. 387, 399 (2012) (citation omitted). The court below concluded that permitting petitioners' state-law avoidance claims to go forward would thwart Congress's intent, both (a) by impeding the trustee's exercise of her own avoidance powers and (b) by potentially unwinding securities transactions that Section 546(e) is intended to protect. Pet. App. 36a-61a. Both rationales for implied preemption are incorrect.

a. The court of appeals suggested that petitioners' state-law avoidance claims could not go forward because Congress "vest[ed] avoidance powers in the trustee" in order to "simplify proceedings, reduce the costs of marshalling the debtor's assets, and assure an equitable distribution among the creditors." Pet. App. 42a-43a. The trustee's avoidance powers encompass certain transfers that are "voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C. 544(b)(1). The court inferred that, once a bankruptcy petition has been filed, permitting creditors to pursue

10

state-law avoidance claims would undermine the congressional judgments reflected in Section 544 by allowing individual creditors to seek assets that the trustee might wish to recover for the estate. Pet. App. 43a-44a.

The court of appeals was correct that unrestricted creditor suits, including avoidance actions, could threaten the orderly disposition of a bankruptcy case. That danger is properly addressed, however, not through principles of implied preemption, but through 11 U.S.C. 362(a), the Bankruptcy Code's "automatic stay" provision. Section 362(a) provides a more tailored mechanism to ensure that creditor suits, including avoidance actions, do not impede the trustee's efforts.

i. Section 544 grants the trustee certain avoidance powers, including the power to "avoid any transfer * * * that is voidable under applicable law by a creditor holding [certain] unsecured claim[s]." 11 U.S.C. 544(b)(1). The court of appeals construed that language to vest "creditors' avoidance claims * * * in the federally appointed trustee." Pet. App. 35a-36a. That reading is unsound. Under Section 544(b)(1), the trustee's ability to avoid a particular transfer turns in part on whether a creditor could obtain that relief under state law. But nothing in the statutory text indicates that Congress intended permanently to divest creditors of their own state-law causes of action.

Relying on this Court's decision in *Hartford Underwriters*, 530 U.S. at 6-7, respondents assert (Br. in Opp. 23) that, when a Bankruptcy Code provision grants a right to the trustee, it necessarily precludes other parties from exercising the same right. But in *Hartford Underwriters*, it was undisputed that the only source of the right in question (the right to collect certain admin-

11

istrative expenses associated with the bankruptcy estate) was the Bankruptcy Code provision that gave that authority to the trustee. 530 U.S. at 5. The Court concluded that, because the relevant Code provision granted that power only to the trustee, other parties could not assert it. *Id.* at 6-7. That holding does not suggest that Section 544(b)(1) *strips* creditors of avoidance claims that state law independently authorizes them to pursue.

ii. The court of appeals was correct that, if the Bankruptcy Code placed *no* restrictions on creditors' ability to pursue state-law avoidance claims after a bankruptcy case has been commenced, creditors' litigation of those claims could undermine the trustee's ability to consolidate the estate and equitably distribute assets. The court was wrong, however, in fashioning an atextual preemption rule to prevent that result. A separate Bankruptcy Code provision, Section 362(a), is specifically designed to prevent parallel creditor suits from impeding the trustee's efforts.

Section 362(a) imposes "an automatic stay on efforts to collect prepetition debts outside the bankruptcy forum." *City of Chicago* v. *Fulton*, 141 S. Ct. 585, 589 (2021). Section 362(a) enumerates several actions that are stayed by the filing of a bankruptcy petition. Those include a "judicial * * * action or proceeding against the debtor * * * or to recover a claim against the debtor that arose before the commencement of the [bankruptcy] case," 11 U.S.C. 362(a)(1), as well as "any act to * * * recover" such a claim against the debtor, 11 U.S.C. 362(a)(6). A state-law avoidance suit is a judicial action in which a creditor who has a "claim against the debtor" attempts to "recover" that claim by clawing back assets that the debtor previously transferred to a

12

third party. *Ibid.* Such suits therefore are stayed by Section 362(a)(1) and (6). *FDIC* v. *Hirsch* (*In re Colonial Realty Co.*), 980 F.2d 125, 131-132 (2d Cir. 1992).

The court of appeals expressed doubt about that conclusion, suggesting that the text of Section 362(a) "does not literally apply to" petitioners' current suits because the automatic stay "applies only to actions against 'the debtor.'" Pet. App. 41a, 50a (citation omitted). That textual parsing ignores that the stay applies not only to *suits* "against the debtor," 11 U.S.C. 362(a)(1), but also to lawsuits or other acts to "recover a *claim* against the debtor," 11 U.S.C. 362(a)(1) and (6) (emphasis added). By including both phrases, Congress made the stay applicable to creditor suits like the ones at issue here, which were filed against third parties but are premised on petitioners' claims against the debtor in the bankruptcy proceedings (Tribune), and in which any recovery will be limited to the value of the creditors' claim against the debtor. See *In re Colonial Realty Co.*, 980 F.2d at 131-132.

The automatic-stay provision addresses the potential conflict between creditor and trustee suits through a nuanced mechanism that makes it unnecessary to apply the blunt instrument of preemption. If, as the court of appeals suggested, the Bankruptcy Code broadly preempts state-law avoidance actions once a bankruptcy petition has been filed, then creditors will be deprived of their rights—and state law will be overridden—even when a particular state-law avoidance action would not interfere with the administration of the relevant bankruptcy estate. By contrast, the automatic stay offers a means of balancing the need to ensure that the trustee can perform her tasks against the rights of the creditors and the sovereign interests of the States in

13

vindicating their own laws. Bankruptcy courts are au-
thorized to lift the automatic stay to permit particular
state-court actions to go forward, 11 U.S.C. 362(d), and
such courts are generally well-equipped to determine
whether particular state-law claims would interfere
with the administration of a particular bankruptcy case.
And unlike preemption rulings, rulings on lift-stay re-
quests are immediately appealable as of right, whether
the court grants or denies relief from the automatic
stay. See *Ritzen Grp., Inc.* v. *Jackson Masonry, LLC*,
140 S. Ct. 582, 586 (2020).[2]

b. The court of appeals also erred in holding that
permitting petitioners' claims to go forward would cre-
ate an "irreconcilable conflict with the purposes of Sec-
tion 546(e)." Pet. App. 61a. In the court's view, Section
546(e) reflects a broad congressional purpose to prevent
uncertainty in the securities markets by ensuring that
certain transactions cannot be unwound. *Id.* at 52a-53a.
The court believed that this broad purpose would be
thwarted by any creditor suit that seeks to avoid a
transaction encompassed by Section 546(e). But the
text of Section 546(e) suggests that Congress had a
more modest intent to prevent only "trustee" actions di-
rected at the set of transfers the provision describes.

This Court in *Merit Management* rejected a similar
effort to override Section 546(e)'s text based on assump-
tions about congressional purpose. 138 S. Ct. at 897. In

---

[2]  In the circumstances of this case, the bankruptcy court might
have declined to lift the automatic stay because of the potential for
unwarranted overlap between petitioners' state-law constructive
fraudulent-transfer claims and the Committee's and Litigation
Trust's Section 548(a)(1)(A) intentional fraudulent-transfer claims.
But respondents did not appeal the lift-stay orders. See Pet. App.
21a.

14

*Merit Management*, petitioners asserted that the Court should interpret Section 546(e) to bar transactions made *through* a financial institution, even though the text of the provision covers only "transactions 'made by or to (or for the benefit of)' covered entities." *Ibid.* The *Merit Management* petitioners argued that the provision's "broad language * * * shows that Congress took a 'comprehensive approach to securities and commodities transactions.'" *Id.* at 896 (citation omitted). But the Court rebuffed the attempt to rely on a "perceived purpose" that was "contradicted by the plain language of the safe harbor." *Id.* at 897.

Other limits on Section 546(e)'s coverage reinforce the conclusion that Congress did not intend to preclude every avoidance action that might introduce uncertainty into securities markets. First, the underlying avoidance powers of the trustee do not come into being, and Section 546(e)'s limitation on those powers therefore has no operative effect, until a bankruptcy case is commenced. See, *e.g.*, 11 U.S.C. 544(a)(1). Section 546(e) therefore leaves States free to prioritize the interests of creditors over the stability of securities markets unless and until a bankruptcy petition is filed. Second, Section 546(e) applies only to transfers "by or to (or for the benefit of)" specific types of entities, including "financial institution[s]." Congress thus insulated from trustee avoidance actions only a subset of transfers made "in connection with a securities contract," reflecting some tolerance for the unwinding of securities transactions. *Merit Mgmt.*, 138 S. Ct. at 894 (citation omitted). Finally, Section 546(e) does not apply even to that subset of transfers so long as the trustee pursues them under an intentional-fraud theory because Section 546(e)'s safe harbor specifically excludes avoidance

15

claims brought "under section 548(a)(1)(A) of this title."
11 U.S.C. 546(e); see 11 U.S.C. 548(a)(1)(A) (authorizing
the trustee to avoid any transfer made "with actual in-
tent to hinder, delay, or defraud any entity to which the
debtor was * * * indebted").

There is nothing anomalous about Congress's deci-
sion to limit the authority of bankruptcy trustees exer-
cising power under federal law, without imposing an
analogous limit on private plaintiffs pursuing state-law
remedies. Unlike federal claims brought by a trustee,
suits by private parties implicate the interests of state
governments in determining what avoidance remedies
should be available to creditors under state law. Re-
spect for that state prerogative may explain Congress's
decision to impose on trustee avoidance suits a limita-
tion that it did not impose on private actions brought
under state law. That is particularly so because the
Bankruptcy Code contains an alternative mechanism,
the automatic-stay provision, that is designed to pre-
vent state-law creditor suits from impeding the trus-
tee's administration of the bankruptcy estate. See pp.
11-13, *supra*.

**B. This Court's Review Of The Preemption Questions Is
Not Warranted**

Although the court of appeals erred in holding that
petitioners' state-law fraudulent-transfer claims are im-
pliedly preempted, this Court's review is not warranted
at this time.

1. Petitioners do not contend that any other circuit
has reached a different conclusion regarding Section
546(e)'s preemptive effect on creditors' state-law
fraudulent-transfer claims. The absence of a circuit
conflict suggests both that the Court's eventual review
of this issue would benefit from further analysis by

16

other courts of appeals, and that the preemption question
may not frequently arise.  When a debtor confirms a
bankruptcy plan, "except as otherwise provided in the
plan" and subject to certain statutory carve-outs, "the
property dealt with by the plan is free and clear of all
claims and interests of creditors," 11 U.S.C. 1141(c),
and the plan typically "discharges the debtor from any
debt that arose before the date of such confirmation,"
11 U.S.C. 1141(d)(1)(A).  Accordingly, the preemption
question will generally arise only in cases where (as
here) a bankruptcy court has granted a motion to lift
the automatic stay to permit a creditor to pursue an
avoidance action before the bankruptcy plan is
confirmed, or the plan specifically permits the creditor
to pursue such an action.  It is not clear how often such
situations arise, and this Court need not weigh in before
additional circuits have addressed the issue.

Petitioners observe (Pet. 30) that there is some disa-
greement between the decision below and decisions of a
Delaware district court and a Delaware bankruptcy
court.  Such a conflict does not generally provide a suf-
ficient basis for this Court's review.  See Sup. Ct. R.
10(a).  In any event, petitioners overstate the depth of
the disagreement.  While both of the Delaware courts
properly declined to treat Section 546(e) as a bar to
creditor claims, only the bankruptcy court analyzed the
issue as a preemption question; the district court rested
its decision on the fact that a creditor is not literally "the
trustee" described in Section 546(e).  See *PHP Liqui-
dating, LLC* v. *Robbins*, 291 B.R. 603, 607 (Bankr. D.
Del. 2003); *PAH Litig. Trust* v. *Water St. Healthcare
Partners L.P.* (*In re Physiotherapy Holdings, Inc.*),
No. 13-12965, 2016 WL 3611831, at *5-*10 (Bankr. D.
Del. June 20, 2016).

17

Contrary to petitioners' contention (Pet. 23-27), the decision below does not conflict with *Merit Management*. To be sure, like this Court in *Merit Management*, the court below considered the extent to which Congress's purposes in enacting Section 546(e) bore on that provision's operative legal effect. See pp. 13-14, *supra*. But *Merit Management* did not present any preemption question, and the Court did not address Section 546(e)'s potential effect on suits brought by creditors. And because the Court issued that decision just three Terms ago, the lower courts have had little opportunity to assess its potential implications for controversies like this one.

2. Petitioners contend (Pet. 16-22) that this Court should grant review to decide whether and to what extent a presumption against preemption applies to disputes involving potential Bankruptcy Code preemption of state-law creditor claims. Petitioners argue (*ibid.*) that the Second Circuit's analysis of that interpretive issue conflicts with decisions of four other courts of appeals. That purported conflict provides no sound basis for this Court's review.

It is not clear that the Second Circuit has rejected the application of the presumption in the manner petitioners suggest. Petitioners' understanding of the decision below is based on the court's statement that "the Bankruptcy Code constitutes a *wholesale preemption* of state laws regarding creditors' rights." Pet. 17 (quoting Pet. App. 34a). That statement unquestionably overstates the preemptive force of the Bankruptcy Code. Later in the decision, however, the court appears to have retreated from its absolutist view, asserting that its "bottom line is that the issue before [it] is one of in-

18

ferring congressional intent from the Code, without sig-
nificant countervailing pressures of state law concerns,"
because "the present matter" does not implicate a
"measurable concern about federal intrusion into tradi-
tional state domains." Pet. App. 36a. That statement
unduly minimizes the "federal intrusion into traditional
state domains" (*ibid.*) effected by the decision below,
which prevents creditors like petitioners from invoking
avoidance remedies that States have chosen to provide.
But the Second Circuit's articulation of the applicable
preemption standard does not appear to conflict with
the holding of any other court of appeals.

In any event, abstract differences in the formulation
or application of a presumption against preemption
would not ordinarily justify plenary review in the ab-
sence of a split in authority on the preemptive force of
a particular federal law. This Court has generally dis-
cussed the circumstances under which a presumption
against preemption applies—much as it has discussed
and clarified other principles of statutory construction—
in the course of resolving particular statutory ambigui-
ties that independently warranted the Court's resolu-
tion. When courts of appeals have disagreed about the
preemptive force of a particular federal statute, that
disagreement may provide an occasion for clarifying the
relevant presumption in a concrete statutory context in
which courts have come to differing conclusions. But
any difference between the formulation of the presump-
tion in one setting and its articulation in a discrete stat-
utory context does not warrant the Court's review.

Finally, this case would be a poor vehicle for clarify-
ing the proper formulation and application of the pre-
sumption against preemption because that presumption
is not outcome-determinative here. Even without a

19

thumb on the scale, Section 546(e) is best read not to bar petitioners' state-law avoidance claims.  See pp. 8-15, *supra.*

## II. THE SECOND CIRCUIT'S INTERPRETATION OF THE TERM "FINANCIAL INSTITUTION" IN THE BANKRUPTCY CODE DOES NOT WARRANT THIS COURT'S REVIEW

1.  a.  Section 546(e) covers transfers by or from a "financial institution" made "in connection with a securities contract."  11 U.S.C. 546(e).  Section 101(22)(A) defines the term "financial institution" to include both a bank (or similar entity) *and* a "customer" of such an entity if the entity is "acting as agent or custodian" for the customer "in connection with a securities contract."  11 U.S.C. 101(22)(A); see Pet. App. 23a-24a.

In the decision below, the Second Circuit held that Section 546(e) encompassed the transfers between Tribune and its stockholders because a financial institution, Computershare, served as Tribune's "Depositary" in the transaction.  Pet. App. 24a.  The court held that, by hiring Computershare as its depositary, Tribune became Computershare's "customer" and Computershare became Tribune's "agent" "in connection with" the leveraged buyout, so that Tribune itself acted as a "'financial institution.'"  *Id.* at 24a-29a.  The court suggested that a transfer may qualify for Section 546(e)'s protections so long as one of the parties has retained a financial institution to "effectuat[e]" some facet of the transaction, even if the financial institution's role is merely to "accept[] the funds" of its customer and to use those funds to make payments on the customer's behalf.  *Id.* at 28a.

That understanding of Section 101(22)(A) would render *Merit Management* a virtual nullity.  The *Merit*

20

*Management* Court rejected prior lower-court deci-
sions holding that Section 546(e) encompasses transfers
made "'through'" enumerated entities that are acting as
"intermediar[ies]." 138 S. Ct. at 895-897. The Court
held that Section 546(e) did not cover the transfer at is-
sue in that case (between a harness racing company and
one of its shareholders), even though two "'financial
institution[s]'"—Credit Suisse, as a financer, and Citi-
zens Bank, as a third-party escrow agent—were in-
volved in the transaction. *Id.* at 891-892. Under the
court of appeals' view, however, the *Merit Management*
transaction likely fell within Section 546(e) because at
least one party to the transfer was a customer of Credit
Suisse or Citizens Bank, and those financial institutions
were retained to effectuate certain aspects of the trans-
action.

As the court below observed, this Court in *Merit
Management* expressly declined to address the poten-
tial implications of Section 101(22)(A)'s definition of the
term "financial institution." Pet. App. 24a n.9 (quoting
*Merit Mgmt.*, 138 S. Ct. at 890 n.2). But the court of
appeals' approach would largely negate the precisely
crafted limits that Congress placed in Section 546(e).
By its terms, the safe harbor for transfers in connection
with securities contracts applies only to transfers
"*made by or to (or for the benefit of)* a commodity bro-
ker, forward contract merchant, stockbroker, financial
institution, financial participant, or securities clearing
agency." 11 U.S.C. 546(e) (emphasis added). Yet under
the court of appeals' interpretation, the safe harbor will
apply to virtually every transfer made in connection
with a securities contract, since some party to almost
every such transfer will rely on a "'financial institu-
tion'" to help "effectuat[e]" the transaction. Pet. App.

21

28a.  As this case illustrates, financial institutions are routinely used to facilitate large securities transactions; but even an individual stock purchaser is likely to rely on her bank to carry out some aspect of a securities transaction, *e.g.*, by executing a wire transfer or making payment on a check.  That potential effect on the practical scope of Section 546(e)'s coverage bears on the proper understanding of Section 101(22)(A).

   b.  The court of appeals largely ignored these consequences of its ruling.  Accordingly, the court did not consider whether there might be a better way to harmonize the definition of "financial institution" with the limits that Congress sought to place on Section 546(e)'s coverage.  For example, the court did not consider whether, in order to qualify as a "financial institution," a party to the transfer must make a bank (or similar entity) its agent for significant aspects of the overall transaction, rather than obtaining from the bank mere ministerial assistance related to some facets of the transaction.  The court likewise did not consider whether some limiting construction of the term "customer" or "agent" in Section 101(22)(A) might be adopted to better harmonize that provision with Section 546(e).

   No other circuit has addressed whether, or under what circumstances, a party may qualify as a "financial institution" for purposes of Section 546(e) simply by retaining a bank (or similar entity) to help effectuate a securities transaction.  Indeed, before *Merit Management*, *no* court had considered this possibility, and the recency of that decision means that few courts have had the chance to do so since.  Even if this Court's review is ultimately needed to clarify the meaning of Section 101(22)(A), and thus the scope of Section 546(e)'s safe

22

harbor, the Court would likely benefit from prior consideration of the issue by additional courts of appeals.

2. For two reasons, this case would be a poor vehicle for clarification of Section 101(22)(A).

First, *Merit Management* was decided during the pendency of this case, and before that decision, no court had even considered the possibility that an entity like Tribune might itself qualify as a "financial institution" for purposes of Section 546(e). Accordingly, the parties did not address the issue during the district court proceedings here, and that court had no opportunity to perform any relevant fact-finding. The court of appeals dismissed that difficulty by asserting that none of the material facts are in dispute. Pet. App. 18a n.5. But petitioners vehemently contest that assertion (see, *e.g.*, Pet. 12-13 & n.2), and the uncertainty regarding the facts—as well as the absence of record development in the district court—would likely hamper this Court's review.

Second, in the wake of *Merit Management*, the Litigation Trust, which is the successor in interest to the Committee that had been acting as trustee, has attempted to amend its own complaint to add claims for constructive fraudulent transfer. 2019 WL 1771786, at *3. The Trust argues that the Committee did not originally pursue those claims because pre-*Merit Management* circuit precedent foreclosed that possibility. *Id.* at *5-*6. It therefore asserts that, in the wake of *Merit Management*, it should be permitted to pursue the constructive fraudulent-transfer claims. *Id.* at *4-*12. The district court rejected that assertion, *id.* at *6-*12, but the issue is now on appeal, C.A. Docket 19-3049 (argued

23

Aug. 24, 2020).  The presence of that parallel suit pro-
duces an additional complication that will not be present
in future cases.

### CONCLUSION

The petition for a writ of certiorari should be denied.

Respectfully submitted.

> ELIZABETH B. PRELOGAR
> *Acting Solicitor General*
> MALCOLM L. STEWART
> *Deputy Solicitor General*
> SARAH E. HARRINGTON
> *Deputy Assistant Attorney*
> *General*
> COLLEEN E. ROH SINZDAK
> *Assistant to the Solicitor*
> *General*
> MICHAEL S. RAAB
> KEVIN B. SOTER
> *Attorneys*

MARCH 2021