UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>SEARS HOLDINGS CORPORATION, *et al.*,<br><br>Debtors. | ) Chapter 11<br>) Case No. 18-23538 (RDD)<br>) Jointly Administered<br>) |
| Sears Holdings Corp., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Edward Scott Lampert, *et al.*,<br><br>Defendants. | ) Adversary Proceeding<br>) No. 19-08250 (RDD) |

## ORDER APPOINTING MEDIATORS

Upon the agreement of the Plaintiffs and Defendants in the above-captioned adversary proceeding (the "Adversary Proceeding")[1] and the Admin Representative to attend and participate in good faith in a mediation (the "Mediation") of the Adversary Proceeding; and the Court, after due deliberation, having determined that entry of an order (this "Order") appointing mediators in this Adversary Proceeding is in the best interests of the estates and the parties; and the Court having jurisdiction to enter this Order under 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012 (Preska, C.J.); and this Court having found that venue in this district

---

[1] Capitalized terms used herein but otherwise not defined have the meaning ascribed to such terms in the *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors and (II) Granting Related Relief*, Case No. 18-23538, Docket No. 5370 (the "Confirmation Order") or the First Amended Complaint, dated November 25, 2019, Case No. 19-8250, Docket No. 52, as applicable.

is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and no other or further notice or a hearing being required, it is **HEREBY ORDERED THAT**:

1. The Court authorizes and appoints the Honorable Shelley C. Chapman, the Honorable James M. Peck, Ret., and Jed D. Melnick to serve as co-mediators in connection with the Adversary Proceeding (each a "Mediator" and, together, the "Mediators") and to conduct the Mediation as set forth herein.

2. The Mediators are authorized to mediate the Adversary Proceeding between the Plaintiffs, on the one hand, and the Defendants, on the other. The Mediators may also mediate any other issues that are agreed upon by all of the Mediation Parties (as defined below).

3. The Mediation Parties shall include the following: (i) the Debtors, (ii) the Litigation Designees, acting on behalf of the Plaintiffs, (iii) the Defendants, (iv) the Admin Representative as a participating consultative party, and (v) any Sears D&O insurance carrier potentially responsible for paying fees, costs, any settlement, or a judgment in connection with the Adversary Proceeding, along with any other insurance carrier for any Defendant as requested by the Mediators or as ordered by the Court (in the event an insurance carrier refuses a request by its insured to participate) (each an "Insurer" and, together, the "Insurers") ((i) through (v) each a "Mediation Party" and, together, the "Mediation Parties"). All Defendants shall be required to disclose to the Mediators and all Mediation Parties the names of their respective Insurers (and the dollar limits of any potentially applicable coverage), if any (and, for the avoidance of doubt, any Defendant may satisfy this requirement by providing to the Mediators and the other Mediation Parties a copy of its Rule 26 disclosures in the Adversary Proceeding (to the extent that any Defendant has already provided such information in that disclosure) or by making available for inspection and copying any potentially applicable insurance agreements). Subject to the

immediately following sentence of this Order, and to the extent a Mediation Party or any advisor thereto has not previously executed an agreement governing disclosure of documents and other materials in these chapter 11 cases or the Adversary Proceeding, the Mediation Party or the advisor thereto shall be bound by the following: (i) the *Amended Stipulated Protective Order* signed by the Court in the above-captioned chapter 11 cases on December 7, 2018, ECF No. 1084 (the "Rule 2004 Protective Order"), (ii) the Stipulation Concerning Pre-Petition Documents and Information Subject to Privilege entered into among the Plaintiffs and Defendants dated March 6, 2020, ECF No. 245 Ex. 2 (the "Privilege Stipulation"), (iii) the Stipulated Protective Order signed by the Court in the Adversary Proceeding on June 8, 2020, ECF No. 172 (the "First Action Protective Order"), (iv) the Stipulation Concerning Production of Documents by Transform Holdco LLC entered into among the Plaintiffs and Defendants dated August 12, 2020 (the "Transform Stipulation"), ECF No. 245, Ex. 4 (v) the Stipulation Concerning Production of Certain Documents by the Seritage Defendants entered into among the Plaintiffs and Defendants dated October 12, 2020, ECF No. 245 Ex. 5 (the "Cattonar/Naamani Stipulation"), and (vi) the Stipulation and Protective Order Concerning Production of Documents to Second Action Defendants signed by the Court in the Adversary Proceeding on April 21, 2021, ECF No. 245 (the "Second Action Stipulation and Protective Order," and collectively with the Rule 2004 Protective Order, the Privilege Stipulation, the First Action Protective Order, the Transform Stipulation and the Cattonar/Naamani Stipulation, the "Protective Orders and Stipulations"). Subject to such modifications as the Mediators may deem appropriate or as may be agreed to by the Mediation Parties, the Insurers and their advisors may receive materials produced by any Mediation Party (*e.g.*, the Debtors or any Defendant) covered by the Protective Orders and Stipulations and may share such materials as necessary for tax-reporting, financial-reporting, auditing, reinsurance or regulatory-compliance purposes (and,

3

as to materials produced by any third parties to the Adversary Proceeding, the Insurers and their advisors may similarly receive and share such materials for the same purposes, to the extent permitted by and consistent with the Protective Orders and Stipulations).

4. All costs, fees, and expenses incurred by Judge Peck and Mr. Melnick in connection with their service as Mediators ("Mediators Fees") shall be paid upon presentation of an invoice, without further order of the Court, and split equally between Plaintiffs, on the one hand, and Defendants (and any applicable Insurers), on the other, with the allocation among the Defendants of the 50% share of any such Mediators Fees charged to the Defendants to be the subject of further agreement among the Defendants. For the avoidance of doubt, any allocation of Mediators Fees among Defendants shall not be cited or relied on by any Mediation Party or any other person in any future litigation as evidence of the appropriate allocation of any Defendant's or insurer's responsibility for past or future fees, costs, settlement or judgments. Judge Peck and Mr. Melnick, acting in their respective capacities as employees or representatives of Morrison & Foerster LLP and JAMS, are hereby authorized to enter into separate engagement letters or similar agreements with Plaintiffs and Defendants that may contain supplemental mutually acceptable terms and conditions relating to the Mediation and the Mediators Fees, including, without limitation, provisions relating to the waiver of conflicts and future conflicts waivers.

5. When and as requested by the Mediators, each of the Mediation Parties, through a respective principal and/or attorney able to make recommendations on behalf of the applicable Mediation Party, shall attend and participate in the Mediation; *provided* that there is no presumption or expectation that each Mediation Party attend each Mediation session.

6. For the avoidance of doubt, nothing in this Order may be deemed to alter the Plan or the Confirmation Order, and all rights of the Mediation Parties are reserved.

7.      The Mediators may request that any Mediation Party participating in a Mediation session appear with at least one principal; *provided* that, for the avoidance of doubt, (a) the selection of that principal shall be left to the discretion of each Mediation Party and nothing in this Order requires, or is intended to require, even at the request of the Mediators, the direct participation or attendance at the Mediation by any particular individual, and (b) any principal or counsel for any Mediation Party may participate by video- or tele-conference at his or her election.

8.      No later than three business days following the entry of this Order, or as soon thereafter as the Mediators are available, the Mediators shall meet and confer with the Mediation Parties (or any subset thereof) to commence discussions regarding mediation procedures and a schedule for the Mediation, which shall be consistent with the terms of this Order in all material respects (collectively, the "<u>Mediation Procedures</u>").  The Mediators will ultimately determine, in their sole discretion, the Mediation Procedures, including the nature and number of written submissions, if any, and including the nature and number of and respective participants in Mediation sessions, so long as such procedures are consistent with the terms of this Order in all material respects.  The Mediation shall conclude no later than May 23, 2022, unless expressly authorized by further order of this Court on notice to the Mediation Parties.  The Litigation Designees may file a motion seeking approval of a litigation financing arrangement prior to April 25, 2022, *provided* that consideration and determination by this Court of any such motion shall occur no earlier than June 10, 2022.  The deadline for any responses to such motion, including objections, shall be no later than 14 days prior to the hearing to consider such motion.

9. Except as provided in paragraph 16 of this Order, the Mediators[2] shall have no communication with the Court relating to the substance of the Mediation or matters occurring during the Mediation. Further, the Mediators shall not disclose whether a verbal agreement was reached or a Mediation Party has refused to execute a definitive written settlement agreement. The Mediators shall have no obligation to make written comments or recommendations. Except as provided in paragraph 16 of this Order, the Mediators shall not be compelled to testify or disclose any information concerning the Mediation in any forum or proceeding, nor shall any Mediation Party or any other party in interest: (a) call or subpoena the Mediators as a witness or expert in any proceeding relating to the Mediation, the subject matter of the Mediation, or any thoughts or impressions that the Mediators may have about the Mediation Parties, or their respective positions, in the Mediation, (b) subpoena any notes, documents or other materials prepared by the Mediators in connection with the Mediation, or (c) offer any statements, views or opinions of the Mediators in connection with any proceeding, including, without limitation, any pleading or other submission to any court.

10. No Mediation Party shall be bound by anything said or done during the Mediation unless such party voluntarily agrees to be so bound by a written and signed stipulation or settlement agreement.

11. All communications made by and all submissions prepared by a Mediation Party in connection with the Mediation, including but not limited to: (a) discussions among any of the Mediation Parties during the course of the Mediation, including discussions with or in the presence of the Mediators, (b) mediation statements and any other documents or information provided to

---

[2] When used in this paragraph "Mediators" includes each Mediator's staff (including Court staff) engaged in the Mediation.

6

the Mediators and/or the Mediation Parties in the course of the Mediation, and (c) all correspondence, settlement proposals, counterproposals, term sheets and offers of compromise produced for, as a result of, or in connection with the mediation ((a), (b), and (c), collectively, the "Settlement Proposals") shall remain confidential, shall not be made available to the public and, as applicable, shall be subject to the Protective Orders and Stipulations; *provided however,* that (i) nothing in this Order shall operate to protect from discovery pre-existing documents, materials or information simply because it is shared with the Mediators or otherwise disclosed during the Mediation, (ii) the Mediation Party making any such Settlement Proposal may agree to the disclosure of its own Settlement Proposal, and (iii) nothing in this Order limits the ability of any Mediation Party to speak publicly (whether through court pleadings, court statements or otherwise) regarding issues in these cases, provided that doing so does not disclose the Settlement Proposals made by other Mediation Parties or responses thereto.  The materials and communications described in each of the foregoing clauses (a) through (c) of this paragraph 11 shall: (w) be protected from disclosure (and shall not be disclosed) to any other Mediation Party or to any other person or party who is not a Mediation Party except in accordance with this Order or an applicable confidentiality agreement, (x) not constitute a waiver of any existing privileges and immunities, (y) not be used for any purpose other than the mediation, and (z) be subject to protection under Rules 408 and 502(d) of the Federal Rules of Evidence and any equivalent or comparable state law other federal law or Federal Rule, Local Rule or Appellate Rule (collectively, "Applicable Rules Governing ADR").  For the avoidance of doubt, if no settlement agreement is reached, then the foregoing materials shall not be admissible anywhere unless they otherwise have become, or become, public without any breach of this Order.  The terms of the Protective Orders and

Stipulations and this Order shall govern any issues with respect to any Mediation Party's disclosure of any Settlement Proposals.

12. The Mediation Parties and/or their respective counsel and advisors shall not in any way disclose to any non-party or to any court, including, without limitation, in any pleading or other submission to any court, any such discussion, mediation statement, other document or information, correspondence, resolution or Settlement Proposal (subject to paragraph 11 of this Order) that may be made or provided in connection with the Mediation.

13. Notwithstanding anything in this Order to the contrary, nothing in this Order other than compliance with the Protective Orders and Stipulations shall prevent a Mediation Party from disclosing information revealed during the Mediation to the extent such disclosure is required, or as may be required or requested by a governmental or regulatory entity with oversight or other authority over such party, that is within the oversight or other authority of such governmental or regulatory entity or required by statute or court order or other legal or regulatory requirements applicable to such party; *provided, however,* that if such party is requested or required to disclose any information to any third party or governmental or regulatory authority, such party shall, to the extent not legally prohibited, provide the disclosing party with prompt written notice of such requirement prior to any disclosure and shall furnish only that portion of such information or take only such action as is legally required.

14. To the extent that any Mediation Party is in possession of privileged or confidential documents and/or information provided to such party pursuant to the terms and conditions of the Protective Orders and Stipulations, such information may, but shall not be required to, be disclosed to the Mediators or other Mediation Parties, but shall otherwise remain privileged and/or confidential. Any Mediation Party may provide documents and/or information to the Mediators

8

that are subject to a privilege or other protection from discovery, including the attorney-client privilege, the work-product doctrine or any other privilege, right or immunity the parties may be entitled to claim or invoke (the "Privileged Information"). By providing the Privileged Information solely to the Mediators and no other party, neither the Mediation Party nor their respective professionals intends to, nor shall, waive, in whole or in part, the attorney-client privilege, the work-product doctrine or any other privilege, right or immunity they may be entitled to claim or invoke with respect to any Privileged Information or otherwise. Any work product, materials or information shared or produced by a Mediation Party with the Mediators, including Privileged Information, shall be subject to all applicable mediation privileges and Applicable Rules Governing ADR and shall not be shared by the Mediators with any other Mediation Parties without the consent of the sharing or producing party.

15. Nothing in this Order is intended to, nor shall it, waive, release, compromise, or impair in any way whatsoever, any claims or defenses that a party has or may have, whether known or unknown, in connection with or relating to acts or omissions that took place prior to entry of this Order.

16. Promptly following the conclusion of the Mediation in accordance with the Mediation Procedures (such date, the "Termination Date"), but no later than two business day after the Termination Date, the Mediators shall file a notice with the Court setting forth the following: (i) that the Mediators have conducted the mediation, (ii) the names of the participants in the mediation, (iii) whether the participants in the mediation acted in good faith, and (iv) whether and to what extent the mediation was successful.

17. The Mediators[3] shall be immune from claims arising out of acts or omissions incident to their service as Mediators in the Chapter 11 Cases. The foregoing is in addition to the immunity of Judge Chapman and Court staff under Federal and common law.

18. For the avoidance of doubt, to the extent any part of this Order shall conflict with Local Rule 9019-1 or the General Order, the terms and provisions of this Order shall govern.

19. This Court retains exclusive jurisdiction to enter supplemental orders concerning all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated: April 6, 2022
      White Plains, New York

*/s/Robert D. Drain*
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

---

[3] When used in this paragraph, "Mediators" includes each Mediator's staff (including Court staff) engaged in the Mediation.